## CORA HESLET ET AL.

### v.

## JAMES HESLET, ex'r, etc.

1. STATEMENT.—John Heslet, the father of the testator, Joseph Heslet, died October 30, 1860, leaving Eliza Ann, his widow, and twelve children, including said Joseph, Mrs. Mary A. Staufer and Nancy Jenks, and a will devising his homestead to his widow for life, and directing upon her death it be sold, and the proceeds equally divided among his children. The widow survived until January 18, 1878. Joseph, the testator, after his father's death, purchased the interest of the other children, except Mrs. Staufer and Mrs. Jenks, and took from them deeds in the usual form of conveyances of real estate. He occupied the premises with his family until he died, April 24, 1874, leaving Cora, his widow, and William A., his only child, and a will, giving, after the payment of his debts, to his widow $1,000 and one-third of the *real estate* of the homestead, to his son, Wm. A., two-thirds of his homestead estate; to his brother James, $1,000: to his sisters Rachel and Mary A., $100 each; and his interest in the Mendota property, to his sister Martha, for life, and at her death, to his brother James; to the Am. Board of F. M. $1,200; to the trustees of C. $300; and his 80 acre lot in Meriden to be disposed of at the option of his executor, and the proceeds to apply on his debts and to purchase the interest of heirs in his homestead, and any remainder to go to the maintenance, and education of his child. So much of the will as relates to the homestead not to take effect till the death of his mother.

2. CONSTRUCTION OF WILL—PROCEEDS OF REAL ESTATE—DEVISE—LEGACY.—That the gifts by the will of "one-third of the real estate of the homestead" to the widow for life and of the two-thirds of his "homestead estate" to the child are not devises of real estate but are specific legacies and to be paid in full.

Heslet v. Heslet.

3. PROCEEDS OF SALE TO BE MADE REGARDED AS MONEY.—That what John Heslet by his will gave to his children—proceeds of sale directed to be made of land was to be regarded as money.

4. THOSE ENTITLED TO PROCEEDS MIGHT ELECT TO HOLD THE LAND. —That those entitled to the proceeds might have elected to take and hold the land as such in lieu of the proceeds, but they could do so only with the concurrence of all who were so entitled; there being no such concurrence in this case, the interest of Joseph remained in him an interest in money, and his bequests of it by the description of land could not change its real character in the hands of his legatees.

5. RIGHTS OF THE WIDOW.—There being no devise of land or any estate therein to the widow, so as to bar her dower in lands or her share in personal estate, under the statute then in force, she was entitled, if she chose to claim 't, to one-third of all the personalty remaining after the payment of debts, and to this right all legacies must yield. That the widow did not claim any portion of the proceeds under the statute, and as this could not injuriously affect any other party it was not for the executor or the court to interpose, as to her right, what she thus disclaimed.

APPEAL from the Circuit Court of LaSalle county; the Hon. GEORGE W. STIPP, Judge, presiding. Opinion filed December 21, 1880.

Messrs. MAYO & WIDNER and D. A. COOK for appellants; claimed that if the interests in the homestead devised to the wife and son are held to be personal property, and not real estate, still, to give effect to the testator's intention such devises must be held to pass to the two beneficiaries like proportions of the proceeds of the sale of the homestead; Heirs of Wright v. Minshall, 72 Ill. 584; 1 Jarman on Wills, 1st. Am. ed. p. 537; 1. Williams on Executors, 734; 2 Redfield on Wills, 145; Gilbraith v. Winter, 10 Ohio, 64; Farnham v. Bascom, 5 Central Law Journal, 204.

When the gift is to be regarded as a specific legacy: Sidebotham v. Watson, 11 Hare, 170; Guillame v. Aderly, 15 Vesey, 384 ; Chairworth v. Beach, 4 Vesey, 555; James v. Johnson, 4 Vesey, 364; Gidding v. Seward, 16 N. Y. 365; Stout v. Hart, 2 Halstead, 414; Towle v. Swazy, 106 Mass. 100; Walton v. Walton, Johnson Ch. Rep. 257; Loring v. Woodward, 41 N. H. 391; Measure v. Carlton, 30 Beavan, 538; Roper on Legacies, 199.

Heslet v. Heslet.

When real estate not to be charged with the payment of legacies: Heslop v. Gatton, Ex'r, 71 Ill. 528; 'Lupton v. Lupton, Johnson Ch. Rep. 614; 2 Redfield on Wills, 208.

Equity looks upon that as done which ought to have been done: 1 Story Eq. Jur. Sec. 790, and note 1, Sec. 1212.

RICHOLSON & SNOW, CHARLES BLANCHARD and R. A. McDONALD, for appellees; that the devise of the proceeds of the sale of real estate to be made must be regarded as money: Baker v. Copenbarger, 15 Ill. 103; Ridgway v. Underwood, 67 Ill. 419; Jennings v. Smith, 29 Ill. 116.

A demonstrative legacy is where a certain amount of money is given to come out of a particular fund: 2 Redfield on Wills, 2 Ed. 136; Molone v. Mooring, 40 Miss. 247.

Legacies will be declared general unless it clearly appears they are intended to be specific: Apreece v. Apreece, 41 Vesey & B. 364; Dowman v. Rust, 6 Rand (Va.) 567; Bray v. Lamb, 2 Dev. Eq. (N. C.) 372.

As to the duties of executors, see Pingree et al. v. Jones, 80 Ill. 181.

PLEASANTS, J. This was a bill filed by appellee, as executor, against the widow, child and others, devisees and legatees of said testator, to obtain a construction of the will, especially in reference to the property therein mentioned as his homestead, and for direction to appellee in execution to his trust.

John Heslet, the father of said testator, died Oct. 30, 1860, leaving Eliza Ann, his widow, and twelve children, including said Joseph, the testator herein, appellee, Mary A. Stanfer and Nancy Jenks, and a will devising said homestead to said widow for her natural life and directing that upon her death it be sold and the proceeds equally divided among all his said children.

His widow survived until Jan'y 18, 1878. His son, Joseph, the testator herein, after his father's death, purchased the interest of all the other children, excepting Mrs. Stanfer and Mrs. Jenks, and took from them respectively deeds therefor in the usual form of conveyances of real estate. He occupied

the premises with his family until he died, April 28, 1874, leaving the said Cora, his widow, and the said William A., his only child, and a will in the words and figures following, to wit:

"In the name of God, amen: I, Joseph Heslet, of the town of Earl, county of LaSalle and State of Illinois, being of sound mind and memory, and considering the uncertainty of this frail and transitory life, do therefore make and ordain and publish and declare this to be my last will and testament; that is to say:

*First.* After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give and bequeath and dispose of as follows, to wit: To my beloved wife, $1,000 and one-third of the real estate of the homestead during her natural life; and to my son, William Albert, the two-thirds of my homestead estate; and to my brother, James, $1,000; and $100 each to my sisters, Rachel and Mary A.; and my interest in property at Mendota to my sister, Martha, during her natural life, and after her decease, to my brother, James; and $1,200 to the American Board of Commissioners for foreign missions; and $300 to the Trustees of the Congregational Church of Earlville towards the purchase of a bell; and my 80 acre lot in the town of Meriden to be disposed of at the option of my executor and proceeds to apply on my debts and to purchase interest of heirs on my homestead, and any remainder to go to maintenance and education of my child. So much of this will as pertains to the homestead is not to take effect till the death of my mother. If there should be other heirs by me they shall share equally with my child, William Albert. Likewise I make, constitute and appoint my said brother, James Heslet, to be executor of this, my last will and testament, hereby revoking all former wills by me made."

The executor sold the eighty-acre lot mentioned for $2,090, but did not purchase the interests of Mrs. Jenks and Mrs. Stanfer in the proceeds of the sale of the homestead, and the latter, upon the death of her mother, filed her bill against her sister and the widow, child, executor and legatees of her

brother Joseph, setting up her father's will, her mother's death and the interests of the parties acquired, as above stated, and asking to have the homestead sold and the proceeds distributed to those entitled thereto, according to their several interests; whereupon such proceedings were had that on the 8th of March, 1879, the master made sale of the premises for $7,949.94, of which one-third was paid to him in cash and the residue secured as prescribed by the decree.

After paying the debts and claims allowed against the estate the executor has in his hands only the sum of $2,006, being a portion of the proceeds of his sale of the eighty-acre lot, and which by the will are specifically appropriated to the maintenance and education of the testator's child, and nothing remaining to apply in legacies, except the ten-twelfths of the proceeds of the sale of the homestead, which if available for all, is insufficient to pay them in full, he seeks by this bill to be instructed as to their application.

The questions are whether the gifts, by the will, of "one-third of the real estate of the homestead" to the widow for life, and of the two-thirds of his "homestead estate" to the child, are devises of real estate; and if not, whether they are nevertheless specific legacies, to be therefore paid in full—or demonstrative, to be paid as far as the fund charged will reach —or general, to be abated and paid ratably with the others; and also what amount in value was intended to be given by these bequests respectively.

It was held by the circuit court, and we think correctly, that they were not devises of real estate. The authorities are clear that what John Heslet by his will gave to his children, proceeds of sale directed to be made of land, was money. Baker v. Copenbarger, 15 Ill. 103; Jennings v. Smith, 29 Id. 116.

While those entitled to those proceeds might have elected to take and hold the land as such, in lieu of them, they could do so only with the concurrence of all who were so entitled. Baker v. Copenbarger, *supra;* Ridgeway v. Underwood, 67 Ill. 430. There being no such concurrence in this case, the interest of Joseph remained in him an interest in money, and his bequests

Heslet v. Heslet.

of it by the description of land could not change its real character in the hands of his legatees.    1 Jarman on Wills, marg. p. 536.

We hold that they were bequests respectively of the proportions stated of his interest as it was, that is, of ten-twelfths of the proceeds of the sale of the land: 1 Jarman on Wills, p. 537; Heirs of Wright v. Minshall, 72 Ill. 584.

But what amount was intended?    There being no devise of land or any estate therein to the widow, so as to bar her dower in lands, or her share in personal estate, under the statute then in force, she was entitled, if she chose to claim it, to one-third of all the personalty remaining after the payment of debts; and to this right all legacies must yield: Jennings v. Smith, *supra.*    Upon this ground the circuit court construed the bequest to the widow of " one-third of the real estate of the homestead," to mean one-third of ten-twelfths of the proceeds of the sale of the homestead remaining after deducting the one-third of said ten-twelfths to which she was so entitled under the statute,—in other words, one-third of two-thirds of said ten-twelfths; and so also of the bequest to the child.    We do not suppose it intended to construe the words " one-third" to mean " two-ninths," or " two-thirds" to mean "four-ninths," but that " the proceeds of the sale of the homestead" meant in this case so much only of such proceeds as under the facts were subject to bequest.    The results, however, are the same.

In this we think there was error.    Indeed it can hardly be said to be construction, in its proper sense, the object of which is to ascertain the meaning of language used, but rather a declaration of the supposed effect and actual operation of the language; not of its own force or of the intention of the party using it, but as legally compelled by facts *dehors* the writing.    It is to be observed  that the widow here did not claim any portion of the proceeds under the statute, but sought to subject them absolutely to the disposition of the will; and since this could not injuriously affect any other party it was not for the executor or the court to interpose as her right what she thus disclaimed.    Nor if she claimed it could her claim necessarily embrace any portion of these proceeds specifically.

But if this had been otherwise there was no ambiguity in the will upon the subject in question requiring construction. Ten-twelfths of the proceeds of a sale to be made is a sum as certain in the eye of the law as any that can be stated in dollars. It is ten-twelfths of the amount of the price brought, less the expenses of the sale. And this meaning could not be affected by the widow's statutory right, although its operation might. But the construction under consideration, if otherwise proper, is erroneous as a statement of the operation of these bequests, in that it is confined to them, notwithstanding the fact that the widow's statutory right, if it diminished these, would diminish the other pecuniary legacies also in the same proportion. The decree directs that these, as thus reduced, be paid *pro rata* with the others, which are not so reduced, thus making them too small relatively, even if they were to be paid *pro rata*, by just the amount of the reduction.

But they are not to be so paid unless they are general legacies. It is deemed unnecessary to refer to many of the cases cited in the briefs upon the distinctions between general and specific legacies. Most of them relate to bequests of money due or becoming due to the testator, and secured or evidenced by instruments in writing; in which the inquiry seems to be, whether the gift is of such instrument or of the money in the condition stated, that is, of the debt itself, or is of a certain amount of money, and the fact and manner of its security are stated as incidental or as indicative merely of the source from which it is to be most conveniently realized; and the rule agreed on is that the former is specific and the latter general, but in determining the subject of the gift, in view of this distinction, different courts have put different constructions upon language which seems to be of very nearly, if not quite, the same import. Others of these cases are upon bequests of particular shares of stock in incorporated companies, which are uniformly held to be specific. Here the bequests are of one-third and two-thirds respectively of what the testator calls his homestead; which, as we have seen, are tantamount to these proportions of his interest in the particular real estate referred to; that is, one-third and two-thirds of ten-twelfths of the pro-

Heslet v. Heslet.

ceeds of its sale; and the question is whether these are general or specific.

Perhaps the most intelligible and satisfactory description of a specific bequest is given by Lord Hardwicke in Purse v. Snaplin, 1 Atk. 417, as one which specifically describes the property or interest bequeathed and distinguishes it from all others of the same kind.   See, also, Bouvier's Law Dict. Vol. ii. p. 17; Hinton v. Pinke, 1 P. Wms. 540, note 1; Stephenson v. Dawson, 3 Beav. 342; Stout v. Hast, 2 Halstead, 214; Towle v. Swasey, 106 Mass. 106.

So money, if sufficiently distinguished, may be the subject of a specific bequest, as money in a certain bank, or in such a chest, *Ibid.*  And money the proceeds of any property or interest so distinguished, is as clearly distinguished as such property or interest itself.  Redf. on Wills, Vol. ii. Ch. 1, § 7, ¶ 22 (p. 145 of 2d Ed.); Roper on Legacies, Vol. i. Ch. 3, § 3, p. 199; Page v. Leapingwell, 18 Ves. 463; Creed v. Creed, 11 Cl. & Fin. 491; Stout v. Hast, *supra*; Chase v. Lockerman, 11 Gill. & J. 185; Gilbrath v. Winter, 10 Ohio, 64.

Thus it appears that the bequests by John Heslet to his children being the proceeds of real estate described to be sold, were specific, and the bequests by Joseph of the same interests, or of any specified part thereof, must therefore, by force of the terms, be specific also.

But counsel for appellee insist that to be specific the bequest must be something in the testator's possession at the time of making the will, and at the time of his death, citing Bouvier, *supra*, and that here he had not at either of those times the possession or the enjoyment of the particular thing sought to be bequeathed, but was simply a legatee expectant under the will of his father.

Although the proceeds of the sale were in expectancy the right to them was vested in the testator at the time of the execution of the will and at the time of his death.  Such an interest is the subject of sale or gift *inter vivos*, why not also of specific bequest ?  How does it differ in principle from a legacy of the money to become due upon a particular mortgage ?

What one has contracted for he is regarded as possessed of, for testamentary disposition. Redf. on Wills, Ch. 1, § 6, ¶ 12 (p. 122), and notes and the case cited and quoted from in note 47, on p. 123; Collison v. Girling, 4 My. & Cr. 63.

In our opinion these are specific legacies, to be paid in full. We do not think the testator's real estate or any interest therein was charged with the payment of legacies. The intention to create such charge must be either expressly declared, or fairly and satisfactorily inferred from the language and disposition of the will—as where he directs the debts and legacies to be first paid, or devises real estate after the payment of legacies, or the remainder after such payment. Heslop v. Gatton, Exec'r, etc., 71 Ill. 528; Reynolds v. Reynolds, Exec'r, 16 N. Y., 259; Lupton v. Lupton, 2 Johns Chy. Rep. marg. p. 623; Keeling v. Brown, 5 Ves. 359. No such expression or implication appears in this will. In all the cases when such charge has been held to be made, so far as we are aware, legacies are mentioned *eo nomine* or by clear description, or reference, distinguishing them from debts.

We do not think it proper to indicate any views upon points not passed on by the circuit court, but for the errors above stated the decree is reversed and the cause remanded for further proceedings in conformity herewith.

Reversed and remanded.